UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMARA CIULLA-NOTO,

                       Plaintiff,

v.                                                       Case # 16-CV-6362-FPG

                                                                     DECISION AND ORDER

XEROX CORPORATION,

                       Defendant.
_____

      A very basic question lies at the heart of this employment discrimination case: did Xerox Corporation ("Xerox") fire Plaintiff Tamara Ciulla-Noto ("Plaintiff") for a prohibited reason? Plaintiff claims that she was fired in retaliation for engaging in protected activity and seeks relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). But Plaintiff's complaint lacks any plausible factual allegations regarding the causal connection between her protected activity and her termination. Therefore, Xerox's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 4) must be granted.

## BACKGROUND[1]

      Plaintiff began working at Xerox in 1988 and most recently held the position of "M-2 Material Handler/Fork Truck Driver." During Plaintiff's time at Xerox, she had repeatedly complained to management and to her union about discrimination and was well known for vocally opposing unlawful treatment in the workplace. On August 23, 2013, Plaintiff filed an

---

[1]     The following allegations are taken from Plaintiff's complaint (ECF No. 1) and are accepted as true for the purpose of evaluating Xerox's motion to dismiss.

EEOC charge alleging disability and gender discrimination.[2]  The EEOC issued its determination on September 26, 2013.[3]

A year later, on September 25, 2014, Plaintiff was involved in an altercation with co-worker Susan Arena.  Shortly after Plaintiff's shift, Arena approached Plaintiff in the workplace and began yelling at her and threatening her without any provocation.  Arena said she would "kick [Plaintiff's] fucking ass" and pointed her finger near Plaintiff's face in an offensive and unwelcome manner.

Plaintiff did not reciprocate and instead attempted to remove herself from the situation by walking away, but Arena followed Plaintiff to another area and continued to wave her finger in Plaintiff's face.  Plaintiff, feeling physically threatened and intimidated by Arena, "gently removed Ms. Arena's hand away from her facial area to protect herself."  After Plaintiff moved Arena's hand away from her face, Arena walked away from Plaintiff and said "she's a rat and I want to kill her."  Plaintiff alleges that she "conducted herself as a model employee" during this incident, "never once reciprocating or engaging in any offensive response to Ms. Arena's hostilities."

On October 7, 2014, after investigating the September 25, 2014 altercation, Xerox decided to fire both Plaintiff and Arena.  Xerox concluded that Plaintiff used "inappropriate language" in violation of the Xerox Code of Conduct, but Plaintiff alleges that she never used "any language that was inappropriate in the slightest."  Although dock security cameras would have corroborated Plaintiff's version of events, they "were conveniently not in operation at the time of the incident."

---

[2]  Prior to this charge, Plaintiff had filed "approximately" nine other discrimination and retaliation complaints during her tenure at Xerox.  Plaintiff does not indicate whether those other complaints alleged discrimination on the basis of gender or disability.

[3]  Plaintiff does not allege the substance of the EEOC's determination.

2

Following her termination, Plaintiff received an unsolicited telephone call from a former co-worker who she refers to as "Mr. R." Mr. R told Plaintiff that he had observed the September 25, 2014 incident and was "shocked and dismayed" that Xerox fired Plaintiff. Mr. R also said that he had relayed his observations, which matched Plaintiff's version of events, to Xerox management.

Despite Xerox's stated justification for her termination, Plaintiff alleges that the "real reason" Xerox filed her was to retaliate against her for having previously opposed discrimination in the workplace. Specifically, Plaintiff claims that Xerox fired her for filing an EEOC charge on August 23, 2013 alleging disability and gender discrimination and for filing approximately nine previous discrimination and retaliation complaints during her employment at Xerox.

**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

Xerox argues that Plaintiff fails to state a claim for retaliation[4] under either Title VII or the ADA because she has failed to plausibly allege a causal connection between her protected activity and her termination. ECF No. 4. The Court agrees.

Title VII prohibits employers from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Similarly, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a claim for retaliation under either Title VII or the ADA, a plaintiff must plausibly allege that: (1) the defendant discriminated—or took an adverse employment action—against her, (2) "because" she opposed a practice made unlawful by the relevant statute. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).[5]

With respect to the second prong, a plaintiff must plausibly plead a causal connection between her protected activity and the adverse employment action. *Id.* Retaliation must be the "but-for" cause of the adverse action, meaning that the adverse action would not have occurred in the absence of a retaliatory motive. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ---U.S. ----, 133 S.Ct. 2517, 2533 (2013)).

---

[4]  Plaintiff also mentions the terms "harassment," "hostile work environment," and "discrimination" in the introduction to her complaint and in her prayer for relief. However, Plaintiff does not allege any acts of harassment, hostile work environment, or discrete discrimination.

[5]  Although the Second Circuit in *Vega* set forth the pleading standard for a retaliation claim under Title VII, courts routinely use the same framework to analyze retaliation claims under Title VII and the ADA. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). The Court will adopt that same approach here.

Here, Plaintiff's complaint falls short of that standard. Plaintiff filed her EEOC charge alleging gender and disability discrimination on August 23, 2013, and the EEOC issued its determination a month later. On October 7, 2014, over a year after Plaintiff had engaged in protected activity but less than two weeks after she had been involved in a heated altercation with her co-worker Arena, Xerox decided to fire both Plaintiff and Arena. Although retaliatory purpose may be shown indirectly by alleging that the protected activity was followed "closely in time" by an adverse employment action, no such inference is reasonable in this case. *Id.*; *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."); *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (holding that an eleven-month gap is insufficient, absent any other allegations in plaintiff's complaint suggesting a causal connection).

The bulk of Plaintiff's complaint is dedicated to her allegation that Xerox's stated reason for firing her—namely, that Plaintiff violated the Xerox Code of Conduct by using inappropriate language—was erroneous. At this stage of the litigation, the Court assumes that Plaintiff's version of the events on September 25, 2014 is accurate and that Plaintiff did not use inappropriate language. But even so, Plaintiff has not alleged sufficient facts to raise Plaintiff's right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Rather, given Plaintiff's factual allegations, it is much more plausible that Xerox either (1) made a mistake in concluding that Plaintiff had used inappropriate language or (2) decided to adopt a zero-tolerance attitude towards disruptive confrontations at work by firing both employees who had been involved. *See Brandon v. O'Mara*, No. 10-CV-5174, 2011 WL 4478492, at *8 (S.D.N.Y. Sept. 28, 2011) (dismissing ADA retaliation claim where plaintiff's allegations merely challenged the

employer's stated reasons for its actions, rather than supporting a plausible inference of retaliatory motive). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

## CONCLUSION

For the reasons stated above, Xerox's motion to dismiss (ECF No. 4) is GRANTED. Plaintiff's complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 7, 2017
      Rochester, New York

                                              _____
                                              HON. FRANK P. GERACI, JR.
                                              Chief Judge
                                              United States District Court